

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 1:13-CR-40 |
| | § | |
| MOHAMED LAYE DIOUBATE | § | |

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, by order of the District Court[1], this matter was referred to the undersigned magistrate judge for a hearing and the submission of findings of fact and a report and recommendation on the defendant's *Motion to Suppress* [Clerk's doc. #18].

**A.**     **Background**

On April 17, 2013, a federal grand jury sitting in the Eastern District of Texas returned an indictment against defendant Mohamed Laye Dioubate (hereafter referred to as "Dioubate") [Clerk's doc. #2]. Count One of the Indictment charged Dioubate with possession of fifteen or more counterfeit or unauthorized access devices, in violation of Title 18, United States Code, Section 1029(b)(2).

---

[1] *See Order* referring motion [Clerk's doc. #19].

On August 30, 2013, Dioubate filed the pending motion to suppress [Clerk's doc. #18]. In his motion, Dioubate argues that evidence seized during a traffic stop and the search of his vehicle should be suppressed because the initial stop of his vehicle was not justified.[2] He contends that the initial stop was improper because the arresting officer had no reasonable suspicion that a traffic violation had occurred. Dioubate argues that the video of the traffic stop fails to show that his vehicle veered outside of his lane of travel. He further contends the video of the traffic stop does not substantiate the officer's claim that Dioubate was following the another vehicle too closely.

On October 4, 2013, the Government responded in opposition to the motion to suppress. *See Government's Response to Defendant's Motion to Suppress Evidence* [Clerk's doc. #20]. In its response, the Government contends that the officer conducting the traffic stop on Dioubate had reasonable suspicion to conduct the stop, citing three reasons: suspicion of driving while intoxicated, failing to maintain a single lane, and following too closely.

On October 22, 2013, this Court conducted a hearing on the suppression motion in the manner and form mandated by the Federal Rules of Criminal Procedure. The testimony and evidence presented at the hearing is set forth in the record and the Court will refer to it as part of the analysis set forth below.

B. **Facts adduced at the suppression hearing**

Officer Clint Weir is a police officer employed by the Beaumont, Texas, Police Department. He has been employed in that capacity for approximately eleven years. He has two years of prior experience with the Orange, Texas, Police Department. Weir received the standard training

---

[2] Dioubate only complains about justification for the initial traffic stop of his vehicle. He does not contest any other circumstances of the search and seizure which occurred thereafter.

provided to police officers which includes training regarding traffic stops and training concerning detection of individuals driving while intoxicated.[3] Weir is a member of the Beaumont Police narcotics unit and was assigned to perform criminal interdiction on Interstate 10 as vehicles utilize that route to pass through Beaumont, Texas.

During the evening hours of June 27, 2013, Weir and his partner Detective Dommert were parked on the right shoulder of Interstate 10 westbound in their patrol vehicle, which was an unmarked black Chevy Tahoe. Weir observed a white Ford Expedition pass their location, heading westbound, traveling in the right lane of Interstate 10. After the Expedition passed the patrol vehicle, Weir observed it cross over the solid white line separating the right lane of travel from the right shoulder of the interstate.[4] Weir believed this to be a traffic violation and pulled out onto Interstate 10 to pursue the Expedition.

Weir drove in the left lane of Interstate 10 and caught up with the Expedition. Weir testified that at the time he felt he could not safely pull over into the right lane behind the Expedition because a vehicle was traveling behind the patrol car in the left lane and the driver of the Expedition had slowed down. Weir drove past the Expedition for a distance, pulled into the right lane ahead of it, and once again pulled over onto the right hand shoulder of the Interstate.

---

[3] Weir stated that he has not attended an advanced driving while intoxicated (DWI) school and is not certified to administer breathalyser tests. However, his partner, Detective Dommert, was so certified at the time of the traffic stop in question.

[4] Weir's patrol vehicle is equipped with a video camera to record traffic stops. According to his testimony, the camera apparently records continuously but only preserves and saves anything recorded from a time 30-45 seconds prior to the overheard lights of the patrol car are activated until the conclusion of the stop. Therefore, this alleged traffic infraction was not recorded on videotape due to the timing of Weir activating the overhead lights on the patrol vehicle.

The driver of the Expedition again passed the patrol vehicle which at this time was sitting on the shoulder and Weir once again pulled out in pursuit. During this time, Weir observed the Expedition drive onto the white line separating the right hand lane from the right shoulder on two occasions.[5] It was then that Weir became concerned that the driver could be either intoxicated or fatigued. According to Weir, the driver of the Expedition sped up and began to follow a tractor trailer at an unsafe distance. Weir testified that the Expedition was approximately four car lengths distance behind the tractor trailer and that the traffic conditions at that time were moderate to heavy. Weir felt that if the driver of the tractor trailer had a tire blow out or lost control of the vehicle, the driver of the Expedition would not be able to avoid a collision.

Weir then activated his emergency lights and pulled the driver of the Expedition over ( later identified as Dioubate) for failure to maintain a single lane, following too closely, and for suspicion of driving while intoxicated. Officer Weir subsequently searched the interior of the vehicle and discovered a laptop bag in the rear cargo area.[6] He then opened the laptop bag and discovered a blue spiral notebook and a notepad which he reviewed. Weir then opened a zipper pocket on the laptop bag and found an electronic encoding device. Also, inside of the laptop bag, Weir discovered two velcro pouches which contained a number of credit cards. Finally, Weir observed a laptop computer laying on the backseat and turned it on, reviewing its contents.

---

[5] Weir also testified that the tires of the Expedition merely touched the line rather than passing over it and he did not consider these to be driving infractions (failure to maintain a single lane). These events were recorded by the video camera.

[6] Again, Dioubate only contests the initial stop of the Expedition, and does not contest the legality of his detention or the subsequent search and seizure.

C.  **<u>Analysis</u>**

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *See United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *See Knowles v. Iowa*, 524 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed.2d 492 (1998); *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed.2d 317 (1984). Under the two-part *Terry* reasonable suspicion inquiry, the Court asks whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity - such as a traffic violation - occurred, or is about to occur, before stopping the vehicle. *See United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005), *cert. denied* 546 U.S. 1222 (2006). "The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed.2d 740 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed.2d 621 (1981)). The Fifth Circuit has stated that reasonable suspicion exists when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation

from each other. *See Arvisu*, 534 U.S. at 274. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *See Terry*, 392 U.S. at 27. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. *See Arvizu*, 534 U.S. at 274.

(1.)     Failure to maintain a single lane

As set forth above, Weir testified that he observed Dioubate cross over the lane divider onto the shoulder once after he initially passed Weir's patrol vehicle. Weir stated that Dioubate subsequently drove onto the white line, without crossing over onto the shoulder, on two more occasions before the traffic stop. Weir did admit, however, that he did not consider the fact that Dioubate subsequently drove onto the dividing line without crossing over onto the shoulder to be a traffic infraction. Therefore, this Court focuses on the initial instance where Dioubate allegedly crossed over the line onto the shoulder.

Under Texas law, a driver on a roadway clearly divided into two or more clearly marked lanes for traffic "shall drive as nearly as practical entirely within a single lane; and. . . . may not move from that single lane unless that movement can be made safely." *See* TEX. TRANSP. CODE § 545.060(a) (West Supp. 2013). Simply swerving across a lane dividing line is not itself a traffic violation. *See Eichler v. State*, 117 S.W. 3d 897, 900 (Tex. App. - Houston [14th Dist.] 2003, no pet); *see also United States v. Benavides,* 291 F. App'x 603, 607 (5th Cir. Aug. 27, 2008). Instead, a violation of Section 545.060 of the Texas Transportation Code occurs only when there is movement from one lane to another "*and* the movement is not safe or is not made safely." *Hernandez v. State*, 983 S.W. 2d 867, 871 (Tex. App. - Austin 1998, pet. ref'd) (emphasis in original). The government must show that, given the totality of the facts and circumstances known

to the law enforcement officer who made the stop, the movement could not have been made safely. *See Eichler*, 117 S.W. 3d at 900.

In *Benavides,* the United States Court of Appeals for the Fifth Circuit held that an anonymous tip received by officers did not provide reasonable suspicion to justify a subsequent stop of the defendant's vehicle. *Benavidez*, 291 F. App'x at 606. In that case, the Government asserted at oral argument that the fact that the defendant committed the traffic violation of failure to maintain a single lane under Texas law justified the initial stop. *Id.* The Fifth Circuit noted that the officer in that case did not offer any actions that the defendant took that made his failure to maintain a single lane unsafe. *See id.* at 607. The Court held that the absence of such facts in the record required a conclusion that the traffic stop did not comply with the requirements of the Fourth Amendment. *Id.*

In this case, the record is devoid of any testimony which indicated that, at the moment Weir first observed Dioubate cross the dividing line onto the shoulder of Interstate 10, he thought Dioubate's actions were unsafe. Therefore, Weir's initial stop of Dioubate's vehicle for failure to maintain a single lane was improper.[7]

(2.) <u>Following too closely</u>

Section 545.062(a) of the Texas Transportation Code states:

> "[a]n operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding

---

[7] This Court recognizes that the Fifth Circuit Court of Appeals has held that a traffic stop for failure to maintain a single lane under Texas was valid because the defendant *repeatedly* veered onto the shoulder of the road , which "arguably was a violation" of the Texas statute requiring drivers to keep their vehicle within a single lane of traffic. *See United States v. Zucco,* 71 F.3d 188, 190 (5th Cir. 1995). The evidence in this case, however, shows that Dioubate's vehicle crossed over onto the shoulder one time.

vehicle or weaving into another vehicle, object, or person on or near the highway.

TEX. TRANSP. CODE ANN. § 545.062(a) (West Supp. 2013).

Weir testified that when he was traveling directly behind Dioubate's vehicle, he estimated that the Expedition appeared to be approximately four car lengths behind a tractor trailer which was traveling approximately 65 miles per hour. Weir stated that a safe distance is one car length for every ten miles per hour. Therefore, the safe distance for Dioubate in this instance would have been approximately six car lengths. Weir testified that the traffic conditions at that time were moderate to heavy and he accordingly felt that if the tractor trailer had a tire blow out or the driver lost control, Dioubate would not be able to avoid a collision.

Dioubate argues that the videotape does not depict him driving too closely to the tractor trailer and that Weir did not set forth specific and articulable facts to justify a traffic stop for the offense of following too closely. This Court disagrees. Courts have held that it is a better practice to require law enforcement officers to articulate the factual basis as to why they believe that a vehicle is traveling too closely to another, rather than just rendering an opinion or conclusion. *See United States v. Bryant*, No. 2:11-CR-0026, 2011 U.S. Dist. LEXIS 104505, 2011 WL 4130740, at *3 (N.D. Tex. Sept. 9, 2011) (citing *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005)) (the better practice would have been for the officer to specifically state the facts that allowed him to objectively determine defendant was violating the traffic law). Weir specifically testified that, at some time during the pursuit, Dioubate's vehicle was approximately four car lengths behind the tractor trailer.[8] This testimony was uncontradicted. This is more than a mere conclusion or opinion

---

[8] Again, Weir testified that a safe driving distance is one car length for every 10 mph in speed. At least one appeals court in Texas has utilized this ratio in making a determination as to whether an officer had reasonable suspicion to conduct a traffic stop for following too closely. *See Combs v. State,* No. 01-07-00670-CR, 2009 WL 3248209 (Tex.

and constitutes specific and articulable facts in support of his reasonable suspicion that Dioubate had committed the traffic violation of following too closely.[9] *See United States v. Flores-Manjarez,* 421 F. App'x 407, 409 (5th Cir. April 7, 2011) (officer's estimation that defendant's vehicle was traveling less than two car lengths behind the other vehicle constituted specific, articulable facts justifying reasonable suspicion for traffic violation).

      (3.)    <u>Suspicion of driving under the influence or while fatigued</u>

Finally, Weir testified that one of the reasons for conducting the traffic stop was his suspicion that Dioubate may have been intoxicated or sleepy. He made this conclusion based on the fact that Dioubate was "continuously" weaving within his lane. Dioubate contends that the only evidence of intoxication or fatigue that Weir could point to in support of driving while intoxicated or fatigue are the alleged traffic violations which Dioubate did not actually commit.

"[T]here is no requirement that a particular statute is violated in order to rise to reasonable suspicion. Although not an inherently illegal act, when the officer observed appellant's car weaving between traffic lanes, reasonable suspicion existed to believe appellant was driving the motor vehicle while intoxicated, or that some activity out of the ordinary is or has occurred, so as to justify the temporary stop of defendant's car." *Gajewski v. State,* 944 S.W.2d 450, 452 (Tex. App. - Houston [14th Dist.] 1997, no writ). Weaving within a lane can constitute reasonable suspicion of driving while intoxicated or fatigue even if there is no traffic violation because the vehicle never crosses over the lines separating the lanes. *See Davis v. State,* 923 S.W.2d 781, 784, 788 (Tex.

---

App. - Houston [1st Dist.] Oct. 8, 2009, no pet.) (mem. op.). Because the tractor trailer was traveling at approximately 65 mph, Dioubate should have followed the tractor trailer no closer than 6.5 car lengths.

  [9] Dioubate argues that portions of the videotape do not show him following too closely. As stated herein, Weir admitted to this. However, Weir was adamant that he observed Dioubate following too closely at some point in the pursuit, which was apparently not captured on videotape. This Court finds his testimony credible.

App. - Beaumont 1996, pet. granted) (op. on reh'g), *rev'd on other grounds*, 947 S.W.2d 240 (Tex. Crim. App. 1997). "Weaving entirely within one lane of traffic is not necessarily less dangerous than weaving across lanes." *United States v. Miller*, 188 F. App'x. 287 (5th Cir. July 10, 2006).

Weir testified that Dioubate was continuously weaving. Although the portion of the traffic stop captured on video does not depict this fact, this Court has no reason to question this officer's credibility. The videotape from the camera in the patrol vehicle does show that the right tires of Dioubate's vehicle touched the right stripe separating the right lane of travel from the shoulder on two occasions within a short distance of travel. Therefore, Weir had an articulable, reasonable suspicion to stop Dioubate for suspicion of driving while intoxicated or to check to see if he was fatigued.

### D.     Conclusion and Recommendation of the Court

Based on the above analysis, the Court concludes that Officer Weir had reasonable suspicion to stop Dioubate. Suppression of the search and seizure is therefore unwarranted. Having considered the factors and evidence presented, and based upon the facts and conclusions of law stated herein, the undersigned magistrate judge recommends that the District Court **deny** the defendant's *Motion to Suppress* [Clerk's doc. #18].

### E.     Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal

conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 22nd day of November, 2013.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE